UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIFT-U, A DIVISION OF HOGAN MFG., INC., a California corporation,,<br><br>Plaintiff,<br><br>v.<br><br>RICON CORP., a California corporation, and WESTINGHOUSE AIR BRAKE TECHNOLOGIES CORPORATION dba VAPOR BUS INTERNATIONAL, a Delaware corporation,<br><br>Defendants. | Case No.: 10-CV-01850-LHK<br><br>ORDER GRANTING-IN-PART AND DENYING-IN-PART THE PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT |
| LIFT-U, A DIVISION OF HOGAN MFG., INC., a California corporation,,<br><br>Plaintiff,<br><br>v.<br><br>NORTH AMERICAN BUS INDUSTRIES, INC., an Alabama corporation.<br><br>Defendant. | |

1

Case No.: 10-CV-01850-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART THE PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

On April 29, 2010, Lift-U, a division of Hogan Mfg., Inc. ("Plaintiff") served Ricon Corp. ("Ricon") and Westinghouse Air Brake Technologies Corp. doing business as Vapor Bus International ("Westinghouse") with a complaint alleging infringement of four patents: United States Patent Nos. 7,681,272 ("the '272 Patent"), 7,533,432 ("the '432 Patent"), 7,533,433 ("the '433 Patent") and 7,533, 434 ("the '434 Patent"). Dkt. No. 1. On March 6, 2012, the Plaintiff filed a separate complaint against North American Bus Industries, Inc. ("NABI"), alleging infringement of the same four patents. Dkt. No. 104. The action against Ricon and Westinghouse and the action against NABI were consolidated on March 26, 2012. *Id.* On August 29 and 30, 2012, the parties filed cross-motions for partial summary judgment. *See* Dkt. No. 140 (Pl. Mot.); Dkt. No. 142 (Def. Mot.). Oppositions were filed on September 13 and 14, 2012. *See* Dkt. No. 149 (Def. Op.); Dkt. No. 151 (Pl. Opp.). Replies were filed September 20 and 21, 2012. *See* Dkt. No. 152 (Pl. Reply); Dkt. No. 155 (Def. Reply). The Court GRANTS-IN-PART and DENIES-IN-PART the motions, for the reasons stated below.

## I. BACKGROUND

The Plaintiff designs, develops, manufactures and sells, among other things, fold-out ramps that facilitate wheelchair access to public buses. These fold-out ramps generally lie stowed against the bus floor and are flipped outward through the bus doorway to deploy, similar to a flip-top cellular phone. Such ramps are very stable when stowed or deployed, because gravity holds the flippable portion of the ramp in place. When a ramp is flipped between these two positions, gravity first pulls the ramp towards its starting position, making the flipping hard to start. Midway through the flip, the ramp becomes momentarily balanced, before tipping past its center of gravity and being pulled towards its final, post-flip position.

The invention at issue makes flipping the ramp easier, by providing a "counterbalance" force that pushes against gravity. *See* '433 Patent col. 1:40-53; 2:7-10; 10:15-47; 12:65-13:8. The counterbalance force is provided by a spring or springs. These springs are rigged so that when the ramp is vertical, balanced at its center of gravity, the springs do not push the ramp in either direction. *Id.* In contrast, as the ramp tips towards a horizontal position – stowed or deployed – the

2

Case No.: 10-CV-01850-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART THE PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

springs become compressed and push back against the force of gravity. *Id.* By pushing against the force of gravity, the counterbalance allows longer ramps to be operated with less force. Lift-U began developing this counterbalance in January of 2007. *See* Allen Decl., Ex. S 10:5-9 (Lewis Depo). The counterbalance enabled Lift-U to design a long ramp with a slope of 1:6 that could be operated manually with less than 35 pounds of force: the LU-11 bus ramp, which embodies the asserted claims of the '272, '432, '433, and '434 Patents. *Id.* Lift-U shipped the first production model of the LU-11 to El Dorado, a bus manufacturer, on July 18, 2007, and El Dorado installed this LU-11 on a bus on August 9, 2007. *See id.* 39:17-20. By April 25, 2008, Ricon had also developed a counterbalanced 1:6 slope ramp that could be operated manually with less than 35 pounds of force: the Ricon FoldOver ER6 Series Ramp ("ER6"). *See* Allen Decl., Ex. BB. The Plaintiff's '272, '432, '433, and '434 Patents on the counterbalance issued between May 19, 2009 and March 23, 2010. *See* Dkt. No. 1, Exs. A-D.

On April 2, 2010, Dallas Area Rapid Transit ("DART") issued a solicitation for bids for buses. DART's specification required "simple hinged, flip-out type power-operated (Electric only) ramp design, Lift-U LU-11 or approved equal" with a maximum slope of 1:6 that could be operated manually with less than 35 pounds of force. Coyne Decl., Ex. 3 at LU000733. On April 20, 2010, NABI submitted a request to DART that the Ricon ER6 be "approved equal' to the LU-11. *See* Coyne Decl., Exs. 4 and 5. In support of its request, NABI submitted a brochure describing the ER6, including the allegedly infringing counterbalance. Allen Decl., Ex. F at DART000310-13. On April 23, 2010, NABI requested a price quote from Ricon for ramps meeting the DART specification. *See* Coyne Decl., Ex. 10. Ricon responded with a quotation on April 28, 2010. *See id.*

On April 29, 2010, the Plaintiff filed its complaint against Defendants Ricon and Westinghouse, alleging that the ER6 infringed the '272, '432, '433, and '434 Patents. Compl. ¶ 16. Ricon responded by redesigning the ER6 with a non-infringing counterbalance using offset gas springs to create the ER7. The parties dispute whether the ER7 was ever referred to as the "ER6." On June 18, 2010, DART approved NABI's April 20, 2010 request to have the ER6 "approved

3
Case No.: 10-CV-01850-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART THE PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

equal" to the LU-11, and amended DART's solicitation for bids to specify "the Lift-U LU-11 or the Ricon Fold-Over ER6 1:6" as acceptable wheelchair ramps. *See* Allen Decl., Ex. F at DART000124-25; Coyne Decl., Ex. 6 at NABI00551, 00564. On July 13, 2010, Ricon informed NABI that Ricon would no longer offer the accused ER6. *See* Coyne Decl., Ex. 8.

The ER7 design was complete by at least July 19, 2010. *See* Def. Mot., Ex. 17 (DeLeo Decl., Ex. B). An ER7 was built by August 12, 2010, and from August 12-18, 2010, this ER7 was subjected to 15,000 stow-deploy life cycles to test its longevity. DeLeo Decl., Exs. C and D. In the midst of this testing, on August 13, 2010, NABI submitted an offer to DART to supply buses built with "Ricon Fold-Over ER6 1:6" wheelchair ramps. Allen Decl., Ex. I at 5. The deadline to submit offers to supply DART with buses expired on August 17, 2010, while Ricon was still running longevity tests on the ER7. *See* Coyne Decl., Ex. 16 at NABI0009. On August 19, 2010, Ricon ran additional tests on the ER7. DeLeo Decl., Ex. E. By September 9, 2010, at the latest, Ricon stopped shipping the ER6 and began selling the ER7. *See* Pl. Op. at 25.

On January 25, 2011, DART issued an "Agenda Report authorizing the award of a contract for 452 buses to NABI, and the contract was ultimately awarded on March 29, 2011. *See* Coyne Decl., Exs. 24 and 25. On September 23, 2011, Ricon shipped NABI the first ramp for the DART project, a model 621R, the successor ramp to the ER7. Coyne Decl., Ex. 30. On April 4, 2012, DART amended its specification to change the ramp product reference from "ER6" to "621R." Coyne Decl., Ex. 32.

On October 28, 2011, the Court granted Ricon and Westinghouse's motion for partial summary judgment of invalidity as to all claims asserted against the ER7. Dkt. No. 81. Thus, the Plaintiff does not allege that the ER7 infringes any valid claim. *Id.* On March 6, 2012, the Plaintiff filed its complaint against NABI, which was consolidated with the action against Ricon and Westinghouse on March 26, 2012. Dkt. No. 104.

The Plaintiff seeks damages for: (1) allegedly infringing sales of the ER6; and (2) allegedly infringing offers for sale of the ER6. The Plaintiff has filed a motion for partial summary judgment

that: (1) the ER6 infringes; and (2) NABI made an infringing offer to sell the ER6 to DART on August 13, 2010. Pl. Mot. at 1.

Ricon, Westinghouse, and NABI (collectively, "the Defendants") have filed a motion for partial summary judgment that: (1) NABI did not make an infringing offer to sell the ER6 to DART on August 13, 2010; (2) Ricon did not make an infringing offer to sell the ER6 to NABI on April 28, 2010; (3) the Plaintiff is not entitled to lost profits resulting from NABI's allegedly infringing August 13, 2010 offer to DART; (4) the Plaintiff is not entitled to lost profits resulting from actual sales of the ER6 by Ricon; (5) Ricon did not willfully infringe; and (6) NABI did not willfully infringe.

For the reasons discussed below, the Court: (1) GRANTS the Plaintiff's motion for partial summary judgment that the ER6 infringes the asserted claims as to the original ER6 only; (2) GRANTS the Defendants' motion for partial summary judgment that Ricon did not willfully infringe the asserted claims; and (3) DENIES the parties' cross-motions for partial summary judgment on all other issues.

## II.   LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party, *id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

1    The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party, but on an issue for which the opposing party will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

### III.   ANALYSIS

#### A.   Ricon's original ER6 ramp infringes the asserted claims.

The Plaintiff moves for partial summary judgment that the ER6 infringes claims 1, 3, 4, 9-10, and 15-17 of the '272 Patent; claims 1-5 and 9-17 of the '432 Patent; claims 1-4 and 6-9 of the '433 Patent; and claims 1-8, 10-16, and 19-20 of the '434 Patent (collectively, "the asserted claims").

The Defendants do not contest that the original ER6 embodies the asserted claims. The Defendants argue that the asserted claims are invalid for obviousness under 35 U.S.C. 103. *See* Def. Op. at 13-14 (citing Def. Mot. at Ex. 21 (Smith Report)). However, invalidity and infringement are separate issues. If the Court grants summary judgment of infringement, the Defendants' invalidity defenses will be tried to the jury.

However, the Defendants also argue that the original ER6 was redesigned into a non-infringing ramp that uses an offset gas spring counterbalance. Although the non-infringing ramp was eventually named the ER7, the Defendants argue that the non-infringing ramp briefly shared the name ER6 with the original infringing ramp. The Plaintiff disputes that the name ER6 was applied to the ER7. *See* Pl. Op. at 12-13. The Defendants cite deposition testimony that the name

ER6 was used by Ricon and NABI to refer to the redesigned ramp later named the ER7.[1] *See e.g.* Coyne Decl, Ex. 15 at 68:24-70:5; 100:7-19; 170:4-21. In rebuttal, the Plaintiff cites Ricon emails referring to its gas-spring prototype as the VR600 on August 3, 2010, and as the ER7 on August 18 and 19, 2010. *See* Allen Decl., Ex. U; Coyne Decl, Ex. 17 (Deleo Decl., Exs. D and E). Accordingly, there is a genuine dispute as to whether the Defendants ever used the model name ER6 to describe the ER7 design to potential customers. The Plaintiff does not accuse the ER7 of infringing any valid claim. *See* Dkt. No. 81.

Accordingly, the Court GRANTS the Plaintiff's motion for partial summary judgment that the ER6 infringes the asserted claims as to the original ER6 only, and DENIES the Plaintiff's motion for partial summary judgment that the ER6 infringes the asserted claims as to any ER7 ramps marketed under the name ER6. The Defendants' invalidity defenses will be the subject of the November 26, 2012 jury trial.

### B. There is a genuine dispute of material fact as to whether Defendant NABI offered to sell DART the original ER6 on August 13, 2010.

The Plaintiff moves for partial summary judgment that Defendant NABI infringed the asserted claims by offering to sell the original ER6 to DART on August 13, 2010. On the other hand, the Defendants move for partial summary judgment that Defendant NABI did not infringe the asserted claims by offering to sell the original ER6 to DART on August 13, 2010. The Defendants argue that NABI offered DART the non-infringing ER7, or some speculative ramp that had not been designed by August 13, 2010.

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent." 35 U.S.C. § 271(a). "An offer to sell differs from a sale in that an offer to sell need not be accepted to constitute an act of infringement." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F. 3d 1296, 1308 (Fed. Cir. 2010). "Offers to sell are analyzed under traditional contract principles." *Id.*

---

[1] The Plaintiff objects to this evidence. However, the Plaintiff's objections were not contained within its opposition brief, as required by Civil Local Rule 7-3(a). Accordingly, the Court strikes the Plaintiff's objections.

7
Case No.: 10-CV-01850-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART THE PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

The Defendants do not dispute that NABI's August 13, 2010, response to DART's solicitation was an offer. *See* Def. Mot. at 11 ("what NABI understood it was offering to DART"); *id.* at 12 ("The substance of what NABI offered to DART . . ."). However, the Defendants argue that the August 13, 2010 offer was not for the original ER6. *Id.* at 11-12. "In order for an offer to sell to constitute infringement, the offer must be to sell *a patented invention* within the United States." *Transocean*, 617 F. 3d at 1309 (emphasis added). The Court finds that there is a genuine dispute of material fact as to whether NABI's August 13, 2010 offer was for the original, infringing ER6 or an updated, non-infringing ramp.

### 1. Evidence that NABI offered DART the original ER6 on August 13, 2010.

There is substantial evidence that NABI offered the original ER6 to DART on August 13, 2010, when NABI offered DART the "Ricon Fold-Over ER6 1:6." Coyne Decl., Ex. 16 at NABI00038; Allen Decl., Ex. I at 5. The original DART solicitation for buses specified that the wheelchair ramps be "the Lift-U LU-11 or approved equal." Allen Decl., Ex. F at LU000733. On April 20, 2010, NABI sought to have the ER6 "approved equal" by DART. Coyne Decl., Exs. 4 and 5. NABI submitted a brochure describing the original ER6 in support of its request. Allen Decl., Ex. F at DART000310-13. On July 21, 2010, DART granted NABI's request to deem the ER6 as equal to the Lift-U LU-11. Allen Decl., Ex. F at DART000124-25. Accordingly, DART amended its solicitation for bids to specify "the Lift-U LU-11 or the Ricon Fold-Over ER6 1:6" as acceptable wheelchair ramps. *Id.*

Crystal Pace, the DART employee responsible for approving the ER6 as an "equal" to the LU-11 testified in her March 13, 2012 deposition that she understood NABI to be requesting approval for the ER6 described in the brochure. *See* Allen Decl., Ex. A 47:11-48:19. Ms. Pace also testified that if she had "known that Ricon decided to stop delivery of the ER6 ramp," or that "Ricon had made a decision to redesign its ramp," she would have been "concerned" that the ramp would be unavailable or would not meet the design specification. *Id.* at 86:2-86:21. Ms. Pace testified that she would have "wanted to evaluate the changed design to determine if it meets the specification." *Id.* at 86:22-25. Indeed, Ms. Pace testified that she had not known "prior to today"

8
Case No.: 10-CV-01850-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART THE PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

that NABI ultimately delivered buses with the 621R ramp, and that she never evaluated the 621R ramp. *Id.* at 87:1-20. One April 4, 2012, after Ms. Pace's deposition, DART amended its specification to change the ramp product reference from "ER6" to "621R." Coyne Decl., Ex. 32.

The process by which DART approved the ER6 as "equal" to the LU-11, together with the testimony of Ms. Pace, strongly suggests that DART would have understood NABI's August 13, 2010 offer to be an offer for the original ER6 described in the brochure.

### 2. Evidence that NABI did not offer DART the original ER6 on August 13, 2010.

The Defendants argue that the "Ricon Fold-Over ER6 1:6" offered on August 13, 2010 was not the original ER6, but the design later named the ER7, or possibly some as yet unconceived design. Two classes of evidence cited by the Defendants support the argument that NABI did not offer DART the ER6 on August 13, 2010.

First, there is evidence that NABI believed its offer to be for a non-infringing ramp. On July 13, 2010, Ricon notified NABI that Ricon had stopped producing the original ER6, and was in the process of redesigning the allegedly infringing counterbalance. Furthermore, there is no evidence that NABI was informed that the redesigned ramp would be marketed under the name ER7 rather than the name ER6 until after NABI submitted its bid to DART on August 13, 2010. Thus, the Defendants argue, NABI on August 13, 2010, knew that NABI could not provide DART the original ER6, but could only offer the impending redesigned Ricon ramp using the same name, ER6. However, NABI may still have chosen to offer the original ER6 to avoid the risk that DART would become "concerned" that NABI would be unable to deliver ramps, or that the redesigned ramps might not meet DART's technical requirements. *Cf.* Allen Decl., Ex. A 86:2-86:21 (Pace Depo, describing DART's concerns regarding to redesigned ramps). Indeed, NABI made its August 13, 2010 offer without informing DART that the original ER6 was unavailable.

Second, however, there is evidence that DART understood NABI's August 13, 2010 offer to encompass redesigned versions of the ER6, provided that these redesigned versions of the ER6 met the DART technical requirements such as a 1:6 slope and manual operation with a maximum force of 35 pounds. The infringing spring design of the ER6 was never required by DART's

9
Case No.: 10-CV-01850-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART THE PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

technical specifications. Instead, these specifications addressed the required properties of the ramp, such as a 1:6 slope and manual operation with a maximum force of 35 pounds. *See* Allen Decl., Ex. H. Further, although the ER6 brochure that NABI gave DART described the infringing spring design, this brochure was not attached to the amended DART solicitation. *See* Allen Decl., Ex. H; Coyne Decl. Ex. 23 at 23:14-24:7. Indeed, DART Director of Fleet Engineering Daryl Spencer, who managed the procurement process for the NABI buses, testified in deposition that the DART solicitation did not specify any type of ramp counterbalance, and that qualifying bids could include new ramp models that were not yet built on August 13, 2010. *See* Coyne Decl., Ex. 23 at 103:14-104:15. Further, Mr. Spencer testified that any ramp with the name ER6 would be in compliance with the DART specification, so long as the ramp still met DART's technical requirements. *See id.* at 107:1-108:8. Thus, the Defendants argue that DART understood NABIs offer to encompass potential redesigns of the ER6. Such a redesign, later renamed ER7, is precisely what the Defendants argue NABI intended to offer.

At summary judgment, the Court "does not assess credibility or weigh the evidence." *House v. Bell*, 547 U.S. 518, 559-60 (2006). In light of the conflicting deposition testimony of Ms. Pace and Mr. Spencer as to how DART understood NABI's offer, the Court finds that there is a genuine dispute of material fact as to whether NABI made an infringing offer to sell the original ER6 on August 13, 2010. Accordingly, the Court DENIES both Plaintiff's and Defendants' motions for partial summary judgment as to NABI's infringing offer for sale to DART on August 13, 2010.

**C.     There is a genuine dispute of material fact as to whether Defendant Ricon offered to sell Defendant NABI the original ER6 on April 28, 2010.**

The Defendants also move for summary judgment that Defendant Ricon did not make an infringing offer to sell original ER6 ramps to Defendant NABI.[2] On April 28, 2010, Ricon provided NABI with a price quote for ramps that met DART's technical requirements. The price quote listed the "Model" as "1:6 Reduced Slope Ramp." Def. Mot., Ex. 10 at R003574. It is

---

[2] The Plaintiff has not filed a cross-motion for summary judgment that Ricon did make an infringing offer to sell on April 28, 2010.

10
Case No.: 10-CV-01850-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART THE PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

undisputed that on April 28, 2010, the original ER6 was the only Ricon 1:6 reduced slope ramp that met DART's technical requirements.

The Defendants do not dispute Ricon's April 28, 2010 response to NABI's request for quotation was an offer. *See* Def. Mot. at 9 ("By the very terms of the offer . . . "). However, the Defendants reason that the offer was not for the ER6, citing boilerplate language in the offer that states, "Part Numbers and BOM's [Bills of Material] listed are for proposal purposes only. Final part numbers, deliverables, and breakdown of deliverables to be determined at time of order." Def. Mot., Ex. 10 at R003574. This language does not alter the fact that the "1:6 Reduced Slope Ramp" to which the offer refers appears to be the original ER6. Both parties likely understood that Ricon was offering NABI the ER6. Accordingly, the Court DENIES the Defendants' motion for partial summary judgment that Ricon did not make an infringing offer to sell NABI the original ER6 on April 28, 2010.

### D. There is a genuine dispute of material fact as to Plaintiff's entitlement to lost profits resulting from NABI's August 13, 2010 offer to DART.

The Defendants move for partial summary judgment that the Plaintiff is not entitled to lost profits relating to NABI's August 13, 2010 offer to sell wheelchair ramps to DART. "To recover lost profits, the patent owner must show 'causation in fact,' establishing that 'but for' the infringement, he would have made additional profits." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). One way to show causation is the four-part *Panduit* test. *See Standard Havens Prods. V. Gencor Indus., Inc.*, 953 F.2d 1360, 1372-73 (Fed. Cir. 1992) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1992)). Under *Panduit*, the patent owner must prove: (1) demand for the patented product; (2) the absence of acceptable non-infringing substitutes; (3) the manufacturing and marketing capability to exploit the demand; and (4) the amount of profit the patent owner would have made. *See Standard Havens*, 953 F.3d at 1372-73.

Of the four *Panduit* factors, the Defendants challenge only factor two: the absence of acceptable non-infringing substitutes. "[T]o prove that there are no acceptable noninfringing substitutes, the patent owner must show either that (1) the purchasers in the marketplace generally

11
Case No.: 10-CV-01850-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART THE PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

were willing to buy the patented product for its advantages, or (2) the specific purchasers of the infringing product purchased on that basis." *Standard Havens Prods.*, 953 F.2d at 1373. An acceptable non-infringing substitute may be available even if it is not "on the market or for sale." *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1382 (Fed. Cir. 2002) (citing *Grain Processing*, 185 F. 3d at 1349). "The critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages." *Grain Processing*, 185 F. 3d at 1353. Here, the alleged infringing offer for sale by NABI to DART occurred on August 13, 2010. Accordingly, the Court considers the availability of non-infringing substitutes on August 13, 2010.

It is undisputed that DART's technical specifications for wheelchair ramps required a 1:6 slope, and manual operation with a maximum 35 pounds of force. On August 13, 2010, the LU-11 and the infringing ER6 met these requirements, but it is disputed whether the ER7 was available as a non-infringing alternative. The ER7 had been designed by July 19, 2010. *See* Def. Mot., Ex. 17 (DeLeo Decl., Ex. B). An ER7 was built by August 12, 2010. From August 12-18, 2010, Ricon tested the ER7's durability and longevity by subjecting the ER7 to 15,000 stow and deploy cycles. DeLeo Decl., Exs. C and D. Over the course of this test, the force required to lift the ramp varied from 16 to 19 pounds, depending on the number of stow-deploy cycles. *Id.*, Ex. D. Further testing was performed on August 19, 2010. *Id.*, Ex. E. Thus, on August 13, 2010, testing of the ER7 was ongoing, and the durability and longevity of the ER7 were unknown. Accordingly, on August 13, 2010, the ER7 was not yet in the market or available for delivery. Furthermore, the deadline to submit offers to DART was August 17, 2010, when testing was still incomplete. *See* Coyne Decl., Ex. 16 at NABI0009. Accordingly, NABI could not simply have delayed its offer to DART until after the ER7 was fully developed.

The Defendants also argue that even if the ER7 was not fully developed by August 13, 2010, or by August 17, 2010, the ER7 was so close to being fully developed that the ER7 was available. Specifically, the Defendants argue that Ricon had "all of the equipment, know-how, and experience to design and implement its non-infringing 'ER7' ramp and 621R ramp at the time the alleged offers were made." D's Mot. at 21 (citing *Grain Processing*, 185 F. 3d at 1354). In *Grain*

*Processing*, lost profits were inappropriate because a non-infringing alternative process was available at the time of infringement. *Id.* at 1353-54. The non-infringing alternative was not actually in use at the time of infringement, but the existence of the process was well-known in the industry. *Id.* Accordingly, the defendant did not have to "invent around" the patent because an alternative was readily available. *Id.* Indeed, the *Grain Processing* defendant's transition to the non-infringing alternative was "practically instantaneous." *Id.* at 1346. In contrast, Ricon invented the ER7 offset gas spring to avoid Lift-U's asserted patents. This invention process took 768 man hours over two months, and was not complete even by the August 17, 2010 deadline to submit offers to DART. *See* Allen Decl., Ex. K at 75:19-78:19; Coyne Decl., Ex. 18 at R004721. In sum, when NABI submitted its bid to DART on August 13, 2010, NABI had only three options: offering Lift-U's LU-11, offering Ricon's infringing ER6, or offering Ricon's not yet fully tested ER7.

However, the alleged infringement by NABI is not a sale, but an offer. Accordingly, the relevant question is not whether NABI could have sold DART ER7 ramps as non-infringing alternatives to LU-11 and ER6 ramps. Instead, the issue is whether NABI could have offered DART the impending ER7 ramps as an acceptable non-infringing alternative to the fully-developed LU-11 and ER6 ramps. *See American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1269-70 (2008) (affirming the trial court's denial of JMOL, remittitur, or a new trial on a jury award of lost profits). In *American Seating*, the defendant offered an infringing product instead of a non-infringing product, but ultimately delivered the non-infringing product. *Id.* The jury properly awarded lost profits based on its finding that the non-infringing product did not provide an acceptable alternative. *Id.* Similar to *American Seating*, the Plaintiffs here allege that in order to win the DART contract NABI offered DART the only available alternative to the LU-11: the infringing ER6. The fact that NABI ultimately delivered the non-infringing 621R is immaterial if the ER7 was not an available non-infringing alternative when NABI submitted its winning offer.

On April 4, 2012, DART approved NABI's request to change the DART specification from "ER6" to "621R."[3] *See* Coyne Decl, Ex. 32. This suggests that on April 4, 2012, the 621R

---

[3] The 621R is Ricon's successor ramp to the ER7.

13
Case No.: 10-CV-01850-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART THE PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

provided an acceptable alternative to the LU-11. However, there is a genuine dispute of material fact as to whether on August 13, 2010, DART would have accepted a NABI offer to sell the ER7 which was still undergoing testing as part of Ricon's development process.

The deposition testimony of Mr. Spencer, the DART Director of Fleet Engineering, suggests that DART might have considered the not fully tested ER7 ramp an acceptable alternative to the LU-11 and ER6. Mr. Spencer testified that DART would have approved new ramps with no history of actual use on buses, provided that the ramps met the technical specifications and were under warranty. Coyne Decl., Ex. 23 at 16:16-21; 103:14-104:15. Further, as previously discussed, Mr. Spencer testified that NABI could have fully complied with its bid offering the "Ricon Fold-Over ER6 1:6" by delivering an updated version of the ER6, provided that the updated version met DART's technical specifications. *Id.* at 26:7-27:22; 107:18-108:8.

However, Mr. Spencer's testimony does not prove that DART would have approved the untested ER7 ramp design. Indeed, as previously discussed, Ms. Pace, the DART employee who approved the ER6 as "equal" to the Lift-U LU-11 testified that if she had "known that Ricon decided to stop delivery of the ER6 ramp," or that "Ricon had made a decision to redesign its ramp," she would have been "concerned" that the ramp would be unavailable or would not meet the design specification. *Id.* at 86:2-86:21.

Furthermore, in both instances in which DART approved a Ricon ramp as "equal" to the Lift-U LU-11, DART knew that the approved Ricon ramp was fully developed and available in the marketplace. First, DART approved the ER6 on July 21, 2010, based upon a detailed marketing brochure for the infringing ER6 marked "Copyright 2009." Allen Decl., Ex. F at DART000310-13. This brochure makes clear that the ER6 was fully developed and available in the marketplace by at least 2009. *Id.* Similarly, when DART approved the 621R on April 4, 2012, NABI simply informed DART that the ER6 had been phased out by Ricon and replaced with the 621R, again implying that the offered product was fully tested and market-ready. Coyne Decl., Exs. 31 and 32.

In sum, the testimony of Ms. Pace, together with the fact that DART never approved a Ricon ramp that was not fully developed, raises a genuine dispute of material fact as to whether

14
Case No.: 10-CV-01850-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART THE PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

DART would have considered the untested ER7 an acceptable alternative to the original ER6 on August 13, 2010. The Defendants have not carried their burden of showing the absence of any genuine dispute of material fact as to whether the ER7 was an acceptable non-infringing substitute for the infringing ER6. Accordingly, the Court DENIES the Defendants' motion for partial summary judgment that the Plaintiff is not entitled to an award of lost profits for the August 13, 2010 offer to DART.

**E.  There is a genuine dispute of material fact as to Plaintiff's entitlement to lost profits resulting from Ricon's actual sales of the ER6.**

The Defendants argue that the Plaintiff has not established the absence of acceptable non-infringing substitutes for the ER6 between April 29, 2010 (the date of the Complaint) and September 9, 2010 (the date of the last ER6 sale). The Defendants reason that other ramps existed in the wheelchair ramp market at the time, including other 1:6 and 1:4 ramps. "[T]o prove that there are no acceptable noninfringing substitutes, the patent owner must show either that (1) the purchasers in the marketplace generally were willing to buy the patented product for its advantages, or (2) the specific purchasers of the infringing product purchased on that basis." *Standard Havens Prods.*, 953 F.2d at 1373.

DART was willing to buy the patented LU-11 for its advantages: the LU-11 was a 1:6 slope ramp that could be operated manually with less than 35 pounds of force. Furthermore, the Plaintiff cites a July 12, 2010 email sent by Ricon's John Condon stating that Ricon had incorporated the infringing "counterbalance assembly" because Ricon had lost sales to the Plaintiff because "manual operation" of the Plaintiff's ramp required less force. Allen Decl., Ex. U at R003757. This evidence raises a genuine dispute of material fact as to whether purchasers in the marketplace were willing to buy the patented product (the LU-11) for its advantages. Accordingly, the Court DENIES the Defendants' motion for partial summary judgment that the Plaintiff is not entitled to award of lost profits for Ricon's actual ER6 sales between April 29, 2010 and September 9, 2010.

**F.  There is no genuine dispute of material fact as to willful infringement by Ricon.**

A finding of willful infringement allows an award of enhanced damages under 35 U.S.C. § 284. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007). A finding of willful

infringement requires more than a showing of mere negligence. Rather, to establish willful infringement, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* at 1371. "If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *Id.*; *accord Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012).

Generally, an accused infringer is not objectively reckless where it "relies on a reasonable defense to a charge of infringement." *Spine Solutions*, 620 F.3d at 1319; *see In re Seagate*, 497 F.3d at 1374 ("A substantial question about invalidity or infringement is likely sufficient not only to avoid a preliminary injunction, but also a charge of willfulness based on post filing conduct."). The Federal Circuit has explained that the threshold determination of objective recklessness essentially distills to "whether a defense or noninfringement theory [is] 'reasonable.'" *Bard Peripheral*, 682 F.3d at 1006 (citing *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011). The accused infringer's subjective state of mind is not relevant to this threshold objective inquiry. *In re Seagate*, 497 F.3d at 1371. Thus, while the second prong of *Seagate* is typically a question of fact for the jury, the first prong "should always be decided as a matter of law by the judge." *Bard Peripheral*, 682 F.3d at 1008 (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1324 (Fed. Cir. 2009)).

However, the Federal Circuit has explained that "[i]n considering the objective prong of *Seagate*, the judge may when the defense is a question of fact or a mixed question of law and fact allow the jury to determine the underlying facts relevant to the defense in the first instance, for example, the questions of anticipation or obviousness." *Bard Peripheral*, 682 F.3d at 1008. In *Bard Peripheral*, the Federal Circuit remanded for the trial court to determine the objective reasonableness of the defendant's defenses of inventorship, inadequate written description, obviousness, and anticipation, instructing the lower court to "determine, 'based on the record

ultimately made in the infringement proceedings,' whether a 'reasonable litigant could realistically expect' those defenses to succeed." *Id.*

The Defendants' motion does not address the objective reasonableness of the Defendants' non-infringement and invalidity defenses. However, the Defendants argue that they did not learn of the Plaintiff's patents until the Plaintiff filed its complaint against Ricon on April 29, 2010. Accordingly, the Defendants contend that Ricon's pre-filing conduct could not have been willful.

Furthermore, Ricon's post-filing conduct alone is legally insufficient to prove willfulness. *See in re Seagate*, 497 F.3d 1360, 1374 (Fed. Cir. 2007). The Plaintiff must have had a good faith basis for alleging willfulness at the time the complaint was filed, and the appropriate mechanism for preventing reckless infringement that arises post-filing is to move for a preliminary injunction. *Id.*

The Plaintiff does not contest that Ricon was unaware of the Plaintiff's issued patents prior to filing of the complaint. However, the Plaintiff argues that since at least April 9, 2008, Ricon was aware that the Plaintiff's LU-11, which embodies the asserted claims, had at least one "patent pending." *See* DeLeo Decl., Ex. A ¶ 1; Allen Decl., Ex. AA at R000068-69; Allen Decl. Ex. P at 93:5-94:19.

Furthermore, the Plaintiff presents evidence that Ricon copied the "patent pending" LU-11. First, on August 2, 2007, Ricon's head of sales John Condon recognized that Ricon needed a 1:6 slope fold-over ramp to compete with the LU-11. *See* Allen Decl., Ex. U at R000772-73. Ricon engineers Chris Wyszkowski and Dmitry Koretsky then viewed and operated the LU-11 at a trade show on November 15, 2007. *See* Allen Decl., Ex. P at 18:15-20:1; 102:3-112; Ex. V; Ex. W at 21:19-22:22. Mr. Wyszkowski and Mr. Koretsky then drew sketches of counterbalance mechanisms similar to that of the LU-11. *See* Allen Decl., Ex. U at R003453-54. Mr. Koretsky labeled his sketch "LU-11" and noted that Ricon should "make sure as easy as Lift-U." *Id.*at R003453. In March of 2008, Ricon sought to "discrete[ly]" view an LU-11 ramp. *Id.* at R000787. In discussing where best to view the ramp, Ricon employee Mark Fisher explained, "We understand that we cannot make it look to [sic] obvious that we are picking this ramp apart . . ." *Id.*

17
Case No.: 10-CV-01850-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART THE PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Ricon also photographed the LU-11 counterbalance by no later than April 9, 2008. *See* DeLeo Decl., Ex. A ¶ 1. Finally, the Plaintiff's expert Dr. Rondinone opines that from an engineering standpoint, the ER6 counterbalance is a copy of the LU-11 mechanism. *See* Rondinone Decl, Ex. B ¶ 7F; Ex. C ¶11B-K. Accordingly, the Plaintiff contends that Ricon willfully infringed the patents that eventually issued on the LU-11 counterbalance by choosing to copy the "patent pending" LU-11 counterbalance.

The Defendants do not contest that Ricon was aware that the LU-11 was labeled "patent pending." However, mere knowledge that a product is labeled "patent pending" does not support a finding of willfulness:

> To willfully infringe *a patent,* the patent must exist and one must have knowledge of it. A "patent pending" notice gives one no knowledge whatsoever. It is not even a guarantee that an application has been filed. Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.

*State Industries, Inc. v. AO Smith Corp.*, 751 F. 2d 1226, 1236 (Fed. Cir. 1985) (emphasis in original). *See also Vasudevan Software, Inc. v. TIBCO Software, Inc.*, No. 11–CV-06638-RS, 2012 WL 1831543, at *2 (N.D. Cal., May 17, 2012). Accordingly, the Court GRANTS the Defendants' motion for partial summary judgment that Ricon did not willfully infringe.

**G.  There is a genuine dispute of material fact as to willful infringement by NABI.**

Generally, an accused infringer is not objectively reckless where it "relies on a reasonable defense to a charge of infringement." *Spine Solutions*, 620 F.3d at 1319. However, the Defendants' motion does not address the objective reasonableness of the Defendant's non-infringement and invalidity defenses. In fact, in the Defendants' opposition to the Plaintiff's motion for partial summary judgment, the Defendants concede that the ER6 embodies the asserted claims.

Instead, the Defendants argue that NABI could not have willfully infringed because on August 13, 2010, NABI already knew: (1) that Ricon was redesigning the ER6 to avoid infringing the Plaintiff's patents; and (2) that Ricon would no longer supply the infringing ER6. *See* Coyne Decl., Ex. 8.

18

Case No.: 10-CV-01850-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART THE PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

1       However, the fact that NABI knew that it could not deliver the ER6 to DART does not
2  mean that NABI's allegedly infringing offer to sell the ER6 to DART was not willful infringement.
3  Precisely the opposite is true.  If a jury finds that NABI offered to sell DART the ER6, the fact that
4  NABI knew the ER6 was no longer available due to patent infringement concerns supports a
5  finding of willfulness.  Furthermore, the complaint against NABI was filed on March 6, 2012,
6  more than a year after NABI learned that Ricon was redesigning the ER6 to avoid infringement,
7  and more than a year after NABI's alleged infringing offer for sale.  *See* ECF No. 116.  Thus,
8  NABI's pre-filing conduct supports the Plaintiff's allegation of willfulness.  *See in re Seagate*, 497
9  F.3d at 1374.  Accordingly, the Court DENIES the Defendants' motion for partial summary
10 judgment that NABI did not willfully infringe.

**IV.     Conclusion**

For the foregoing reasons, the Court rules as follows:

(1) The Court GRANTS the Plaintiff's motion for partial summary judgment that the ER6 infringes the asserted claims as to the original ER6 only, and DENIES  the Plaintiff's motion for partial summary judgment that the ER6 infringes the asserted claims as to any ER7 ramps marketed under the name ER6.

(2) The Court DENIES the Plantiff's motion for partial summary judgment that NABI made an infringing offer to sell the original ER6 to DART on August 13, 2010;

(3) The Court DENIES the Defendants' motion for partial summary judgment that NABI did not make an infringing offer to sell the original ER6 to DART on August 13, 2010;

(4) The Court DENIES the Defendants' motion for partial summary judgment that Ricon did not make an infringing offer to sell the original ER6 to NABI on April 28, 2010;

(5) The Court DENIES the Defendants' motion for partial summary judgment that the Plaintiff is not entitled to an award of lost profits for NABI's alleged infringing offer to sell DART the ER6;

(6) The Court DENIES the Defendants' motion for partial summary judgment that the Plaintiff is not entitled to an award of lost profits for Ricon's actual sales of the ER6;

(7) The Court GRANTS the Defendants' motion for partial summary judgment that Ricon did not willfully infringe; and

(8) The Court DENIES the Defendants' motion for partial summary judgment that NABI did not willfully infringe.

**IT IS SO ORDERED.**

Dated: October 25, 2012

*Lucy H. Koh*
LUCY H. KOH
United States District Judge